SAMUEL AMES *v.* THOMAS R. HAZARD.

In a plea for justification to a libel, great certainty of averment is requisite, and the defendant, while he is not bound to justify any forced construction made by way of innuendo upon the language of the publication, must justify the substance of the publication, its character and its imputations, and must justify in the sense in which the innuendoes explain it, if they explain it fairly.

CASE, for libelling the plaintiff, in his office of Chief Justice of the Supreme Court and reporter of its decisions.

The declaration alleged the publication by the defendant, of and concerning the plaintiff in his said offices, of certain libellous matter relating to his connection with, and report of, the suit in equity, *Robert H. Ives* v. *Charles T. Hazard and others*, reported in 4 R. I. Rep. p. 14.

Two special pleas to the declaration having been filed and overruled on demurrer (see *Ames* v. *Hazard*, 6 R. I. 335, where the alleged libellous matter may be found set forth), the defendant filed the following amended special plea:—

"And the said defendant comes and defends the wrong and injury, when, &c., and as to the following alleged libellous matter, set forth in the plaintiff's declaration, namely:—" [here the plea recited the matter alleged in the declaration to be libellous, commencing with, " on perusing this report," &c., and ending with, "prove to be grossly false,"—see 6 R. I. 338] "the said defendant says, that the plaintiff aforesaid, his action aforesaid against him ought not to have or maintain, because he says that the plaintiff aforesaid, in the suit in equity mentioned in his declaration, was counsel for Robert H. Ives, the complainant in said suit, and afterwards, having been appointed Chief Justice of the Supreme Court of Rhode Island, and reporter of the decisions of said Court, made a report of said suit, in his capacity as reporter, of a flagitious character, which was published in the fourth volume of Rhode Island Reports, and in which report the plaintiff made a statement of facts in the words and figures fol-

lowing, namely :—" [here the plea recited the report of the case as contained in 4 R. I. Rep. 14, from the beginning down to the statement of the points made by the counsel, and added the following extract from the report of the statement of said points :— "Binney, Payne and Ames, for the complainant, made the following points and submitted the following authorities : * * * * That the fraud, or surprise in the nature of it, was, in this case, all on the other side, since 'if an agent who is employed to purchase for another, purchases in his own name, or for his own account, he will be held to be a trustee of the principal at the option of the other. Story's Eq. Jurisp. §§ 316, 316a.'"—See 4 R. I. Rep. pp. 18, 19] "upon which said statement said report was based, and in which said report the plaintiff, as such reporter, represented and alleged that the facts, set forth in said statement, formed the basis upon which the decision of the court in said case was made, and which said facts were entirely foreign to any charges preferred in the bill of complaint in said suit, and to any legal issues in any manner involved in said suit, but which were, by the plaintiff, as such reporter, so ingeniously interwoven in the text of said report, and so apparently sustained by the recognition of points submitted by the counsel of said complainant, that persons unacquainted with the real merits of said suit would be likely to be misled and deceived thereby, and which said report contained, in nearly the same words that were used by the plaintiff when acting as counsel as aforesaid, charges against Charles T. Hazard, one of the respondents in said suit, of an infamous, libellous and calumnious character, false in fact, unsupported and unwarranted by any legal allegations or evidence legally before the court in said suit, and wholly inapplicable to the issue in said suit, to wit, that the said Charles T. Hazard bought a certain farm, as the agent for said Ives, and then took a deed thereof to himself, and was and is guilty of fraud and a breach of trust; whereby said report partook, so far as truth and its judicial character were concerned, of all the elements of a gross forgery. Wherefore, the said defendant, at Providence, in said county, at the time mentioned in said declaration, composed and published, and caused and procured to

be published, the alleged libellous matter above set forth, as he lawfully might for the cause aforesaid, and this he is ready to verify," &c.

To this special plea the plaintiff demurred generally.

*Payne, with whom was B. R. Curtis, of Boston, in support of the demurrer.*

*J. M. Blake, in support of the plea.*

BULLOCK, J.   Counsel, we think, misapprehend, in part, the tenor of the amended plea, to which a demurrer is now interposed.   It is not open to all of the objections to the original pleas, which have been heretofore overruled.   (6 R. I. Rep. 343.) The amended plea avers that the alleged facts are, using the language of the publication, "ingeniously," "interwoven," &c. So it alleges that the text of the report is "flagitious," and contains charges "of an infamous, libellous and calumnious character," "false in fact," and unwarranted by any allegations and unsupported by any evidence in the case, and in these respects partook of all of the elements of a gross forgery.

Counsel urged, at the argument, that if the innuendoes extended the fair import of the language of the publication, the only proper course for the defendant was, to demur to the declaration.   It would seem that such a declaration is, upon principle, the just subject of demurrer.   But an imperfect plea is a sufficient answer to a bad declaration.   And if the declaration be faulty, a demurrer interposed by either party opens the whole record for the judgment of the court upon the first substantial defect in the pleadings, at whatever stage it may arise.

While a defendant in libel, pleading in bar the truth, must justify the publication, it does not follow that he must also justify whatever meaning may be imputed to it by way of innuendo; and, certainly, not because the plaintiff does impute such a meaning to it.   It need hardly be said, that such a rule might be fatal to the rights of a defendant.

The office of an innuendo is not to modify, alter or enlarge the language of the publication, but to explain it; to make that which is written more plain by application; but not to make it

mean something more than the language used, fairly and naturally construed, imports. The case of *Bloss* v. *Tobey*, 2 Pick. 320, referred to by counsel, furnishes a plain but somewhat narrow illustration of the rule upon this subject. In that case, the alleged slanderous words being " he burnt it himself," it was held proper to show, by innuendo, to what subject or thing the language referred, but not to show the character or quality of the act, as that the burning was willful and malicious.

Upon the trial of the issue of fact, the jury judge of the meaning of the language used; but if an issue of law be raised, the court may enquire if the words used are used in the sense in which they are charged; and after verdict even, if the words independent of the innuendo are not actionable, upon motion, judgment will be arrested.

But while a defendant is not bound to justify any forced construction, made by way of innuendo upon the language of the publication, he is bound to more than a mere literal justification; he must justify the substance of the publication, its character and its imputations; and he must justify in the sense in which the innuendoes explain it, if they explain it fairly.

In a plea of justification to a libel, great certainty of averment is requisite. This defence is one not favored in law, so that any intendments are to be made in its support. The rule upon this point is strict, because the plea in itself is a repetiton, in a more solemn form, of the alleged defamatory language, and so tends unjustly to aggravate the injury and deepen the stigma under which the plaintiff rests. It is the right of the plaintiff to be advised with certainty of that which he is called upon to rebut, for, as to the charges to be proved, he stands in the position of a defendant. Mr. Baron Alderson, in *Hickinbotham* v. *Leech*, 10 M. & W. 361, says of such a plea, it should have all the precision of an indictment.

When the plea professes to answer the whole or a specific part of the publication, the certainty of averment must extend to and cover everything material in that part of the publication professed to be justified, and which the plaintiff complains of as libellous. Unmeaning adjectives and epithets need not in terms

be justified, but so far as adjectives and epithets qualify, color or intensify, the tone or sentiment of the publication, they must be distinctly justified. In *Morrison* v. *Harmer*, 3 Bing. N. C. 759, cited by counsel, after verdict Tindal, C. J., refuses the motion to arrest judgment expressly upon the ground that the general terms of abuse, not specially justified, in the connexion in which they were used, contained no charge or imputation different from the main charges, and *added nothing to the gist of the libel.* In *Edwards* v. *Bell*, 1 Bing. 444, also cited by counsel, the alleged libel states the invectives were " published from the pulpit ; " the plea avers that they were published from a part of the chapel assigned for the preaching of sermons ; the alleged libel states that this invective occasioned misunderstandings between the congregation and the pastor, while the plea avers only that it occasioned misunderstandings among the congregation. Here, as stated by Gifford, C. J., the only gist of the libel is the charge that the pastor " poured forth personal invective " against an individual, at a time and place devoted to moral and religious instruction. And it is in this case, upon discharging a rule *nisi* obtained by counsel, to enter up a verdict for the plaintiff, after verdict found for the defendants on their special pleas, that Burrough, J., says, " in such a case it is sufficient, if the substance of the libellous statement be justified, it is unnecessary to repeat every word which might have been the subject of the original comment ; " if anything be contained in a charge which does not add to the sting of it, it need not be justified.

These, and other cases which might be cited, while affirming, as they do, that so much of the language of a publication as adds nothing to its libellous character need not in terms be justified by the plea, also adjudge that the substance, as well as the letter, the gist or essence of the entire libel, must be.

The publication charged as libellous may be so, in part, or it may be wholly libellous. No single sentence or paragraph, taken by itself, may be actionable, and yet the whole publication, taken together, may be most defamatory. The substance of the libel,— its main charges,—may be stated in connexion with circumstances of time, place, parties or position of the most aggravating char-

acter. These intensify the main charge, and are in themselves libellous, and therefore it is, that not the main charge alone, but all distinct collateral libellous imputations must be justified. The plaintiff has a right to put all of the publication charged as libellous in issue, for the jury to determine its meaning as a whole, and what injury, if any, it has caused. A plea, justifying an account published in a magazine, in which the plaintiff was alleged to have spent the night previous to a duel, in which his antagonist fell, *in practicing with pistols*, was held insufficient, in not averring that this particular allegation was true, although it averred the truth of all the other statements in the fullest and most circumstantial manner. It was adjudged that the defendant must justify *everything* which was *injurious* to the plaintiff. If the libel charges the commission of an offence in a particular manner, the plea must not only justify the *fact*, but the *manner*. If the offence be charged with circumstances of aggravation, these must be justified as well as the crime. *Helsham* v. *Blackwood*, 11 C. B. 111–128. In the same case, Maule, J., says: "I cannot see why you [defendant] should be relieved from justifying the imputation of unfair and dishonorable conduct, because it happens to be accompanied with a charge of crime." And Jervis, C. J., adds: "I think we should be doing serious injustice to public morals if we permitted ourselves to be influenced by the argument of Mr. Peacock, that it makes no difference as to the *quality* of the libel."

The case of *Clark* v. *Taylor*, 2 Bing. N. C. 663, fairly interpreted, in no wise militates with the rule, that the justification must be coëxtensive with the libel. Certain language, introductory only to the main charge, was not specially justified. The plaintiff had not, by his declaration, sought to place any libellous construction upon this language. A verdict was rendered for the defendant. The plaintiff obtained a rule *nisi* to set aside the verdict, and enter a verdict in his favor, because a part of the publication was not justified. On discharging the rule, the court say, "the plea does not affect to answer the whole publication;" and as the language not justified, standing alone, charged no fraudulent conduct, and no explanation of it by the

plaintiff attached to it any criminatory meaning, the verdict was allowed to stand.

The language of the publication, "that the most *wary* mind," &c., "can scarcely fail of being deceived," in reading the report of the case referred to, that the report was as "pretty a specimen of *unprincipled* special pleading as can be found upon record," the obvious imputations, that by the "contrivances" of "cliques," the plaintiff was "translated" to the offices of "Chief Justice" and "Reporter;" and that as such he exerted an improper influence over the court in which he presided, in moulding their opinion in a case in which he had before been counsel, and "foisted" into that opinion an "atrocious libel;" and that this was done at the bidding of his former client,—are not answered, unless by the averments in the plea, which seem to be pointed at, and are the appropriate answer to, other and distinct portions of the alleged libellous publication.

This language, and these obvious imputations, we cannot but regard as important and substantial. They give character and color to the publication. In the words of C. J. Jervis, they go to the quality of the alleged libel. Some of them go to the mode and manner in which the report was "flagitious," "false" and "calumnious," as well as to the object and purpose of making it so. They reflect upon the character and conduct of the plaintiff, not in connexion with a particular case alone, but upon his general character as a counsellor at law, judge and "reporter." It is not merely the statement or charge, but it is the charge with "the circumstance." And whenever not merely a wrong act is charged, but that it was done in a wrong manner, and for a wrong purpose,—these must be justified as well as the act, for they constitute a part of the libel.

Counsel correctly states, in his argument, that a "demurrer is not designed for delay, but to give the party a good plea for a bad one. The right to demur is coëxtensive with the right to plead."

The legislative department of the government, if they deem the freedom of the press too much abridged by existing enactments, may have a "high duty" to discharge, in so modifying

the present law as to better adapt it to the "existing condition of society;" but we know of no higher duty for a "court" to perform, in deciding upon demurrer, the sufficiency of a special plea in bar, than to determine it by "the law" as it "is written."

*Demurrer sustained.*